```
                UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF INDIANA
                      HAMMOND DIVISION


RICCARDO R. FOGGIA, JR.,         )
                                 )
          Plaintiff              )
                                 )
     v.                          )   Case No. 2:04 cv 122
                                 )
UNIVERSAL STEEL AMERICA, INC.,   )
and UNIVERSAL EISEN UND STAHL    )
GMBH,                            )
                                 )
          Defendants             )
```

OPINION AND ORDER

This matter is before the court on the Motion for New Trial and Alternative Motion for Judgment Notwithstanding the Verdict filed by the plaintiff, Riccardo Foggia, Jr., on February 6, 2006, and the Bill of Costs filed by the defendants, Universal Steel America, Inc. and Universal Steel Eisen Und Stahl GMBH (collectively Universal Steel), on February 15, 2006. For the reasons set forth below, the Motion for New Trial is **DENIED**, the Alternative Motion for Judgment Notwithstanding the Verdict is **DENIED**, and the Bill of Costs is **GRANTED**.

Background

In this diversity case, the plaintiff, Riccardo Foggia, sued his former employer and its parent company for breach of contract stemming from his termination. The defendants counterclaimed for breach of contract, fraud, and breach of fiduciary duty. On January 27, 2006, the jury returned a verdict in favor of the defendants on the plaintiff's claim, and in favor of the plain-

tiff on the counterclaims. Foggia now seeks relief from this verdict on the basis of several jury notes received by the court during the course of jury deliberation. The plaintiff also objects to the defendants' Bill of Costs.

On the final day of jury deliberation, the jury submitted a note to the court stating "We have a question regarding court instruction #28 [.] We wish to award the plaintiff the following: $6,724.36 travel expenses [,] prorate bonus for 2003/2004 all based on employment contract." In response, the court directed the jury to review instruction #14 on the calculation of damages for breach of contract, #15 on the calculation of damages for tort, and #28 a "boilerplate" stating that damages must be reasonable and not speculative.  The parties agreed to this response.

The jury then sent a second note saying, "We understand the instructions given. Our question is where do we list this information on the verdict forms provided?" In response, the court stated "If you return a verdict for the plaintiff on his complaint or the defendant on the counterclaim, please enter the total amount of the verdict in the appropriate blank."  Once again, the parties agreed to this response.

The jury then submitted a third note stating, "Award to plaintiff-$6742.36 travel expense [,] prorated bonus for 2003/2004."  The court responded, "If you find for the plaintiff, your duty is to determine the total amount of the plaintiff's damages, if any, and enter that amount on the verdict form."  The

2

parties again agreed to this directive.

The two verdict forms provided to the jury separated the plaintiff's claim from the defendants' counterclaims. The first verdict form required the jury to indicate either that 1) it found in favor of the plaintiff on the breach of contract claim "in the amount of _____" or 2) in favor of the defendants on this claim. The second verdict form required the jury to indicate either that 1) it found in favor of the defendants/counter-plaintiffs on the breach of contract claim "in the amount of _____" and/or in favor of the defendants/counter-plaintiffs on the various tort counter-claims "in the amount of _____ actual damages, _____ punitive damages" or 2) that it found in favor of the plaintiff/counter-defendant on these claims.

Approximately 15 minutes after the court responded to the third jury note, the jury returned its verdict, finding against the plaintiff on his claim and omitting any reference to the damage calculations suggested in the three jury notes. None of the parties had objected to the jury instructions, and no party moved for judgment as a matter of law prior to entry of judgment. The court also polled the jury members, each of whom concurred in the judgment.

### Discussion

**A.  Motion for a New Trial**

When a federal court sits in diversity, Federal Rule of Civil Procedure 59 governs the court's consideration of whether

3

to grant a new trial.  *See* **Kapelanski v. Johnson**, 390 F.3d 525, 530 (7th Cir. 2004); **McClain v. Owens-Corning Fiberglas Corporation**, 139 F.3d 1124, 1126 (7th Cir. 1998).  Rule 59 states that a new trial may be granted in an action originally tried by jury "for any of the reasons for which new trials have heretofore been granted in actions at law in courts of the United States." In evaluating a motion for new trial, the court must determine "whether the verdict is against the weight of the evidence . . . the damages are excessive, or . . . for other reasons, the trial was not fair to the moving party." **Kapelanski**, 390 F.3d at 530 (internal quotations and citations omitted); **McClain**, 139 F.3d at 1126.

   Foggia argues that the jury verdict in this case was a "compromise verdict," necessitating a new trial.  A compromise verdict occurs "when jurors resolve their inability to reach a determination with any certainty or unanimity on issues of liability by awarding a party inadequate damages." **Carter v. Chicago Police Officers**, 165 F.3d 1071, 1082 (7th Cir. 1998); **Petty v. Northeast Illinois Regional Commuter Railroad Corporation**, 799 F.Supp. 848, 849 (N.D. Ill 1992); **Vaccariello v. Financial Partners Brockerage, Ltd.**, No. 82 C. 5910, 1986 WL 12131, at *3 (N.D. Ill. Oct. 21, 1986). An insufficient damages verdict, coupled with "additional evidence demonstrating that the deficient monetary award resulted from an impermissible compromise," such as "a damages award that is grossly inadequate, a close question of liability, and an odd chronology of jury

4

deliberations" generally is necessary to establish a compromise verdict. *Carter*, 165 F.3d at 1082-83 (*quoting Skinner v. Total Petroleum, Inc*. 859 F.2d 1439, 1445-46 (10th Cir. 1988)). However, these factors are not exclusive. Rather, the "overarching consideration must be whether 'the record itself viewed in its entirety . . . clearly demonstrate[s] the compromise character of the verdict.'" *Carter*, 165 F.3d at 1083 (*quoting Luria Brothers & Company, Inc. v. Pielet Brothers Scrap Iron & Metal*, 600 F.2d 103, 115 (7th Cir. 1979).

In arguing that the verdict was reached by compromise, Foggia has misapplied the cases cited in his brief.  By its very definition, a compromise verdict requires first that the jury find in favor of the plaintiff on the issue of liability. *Carter*, 165 F.3d at 1082. If the verdict is in favor of the plaintiff, then the court determines whether the favorable liability verdict was reached by compromise as evidenced by factors such as inadequate damages and odd chronology of jury deliberations.  *See Carter*, 165 F.3d at 1082-83.  In every case cited by Foggia, and in every other case in which a compromise verdict was alleged, the plaintiff prevailed on his claim. *See, e.g., Kapelanski*, 390 F.3d at 533; *Carter*, 165 F.3d at 1082; *Luria*, 600 F.2d at 115; *National Fire Insurance Company of Hartford v. Great Lakes Warehouse Corporation*, 261 F.2d 35, 37 (7th Cir. 1958); *Yarbrough v. Sturm, Ruger & Company*, 965 F.2d 376, 379 (5th Cir. 1992); *Phav v. Trueblood Inc.*, 915 F.2d 764, 766 (1st Cir. 1990); *Mekdeci v. Merrell National Laboratories*,

5

711 F.2d 1510, 1514-15 (11th Cir. 1983); ***Burger King Corporation v. Mason***, 710 F.2d 1480, 1486-87 (11th Cir. 1983). Here, the jury found *against* Foggia on the issue of liability.  Accordingly, no compromise verdict could have occurred.

Because the theory of compromise verdict is not available to Foggia, the only remaining means by which the court may consider the jury notes at this stage of the litigation is through Federal Rule of Evidence 606(b).  Rule 606(b) prohibits jurors from testifying "as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent or dissent from the verdict . . . or concerning the juror's mental processes in connection therewith. . . ." However, a juror may testify as to an outside influence or extraneous prejudicial information that was improperly brought to the jury's attention. The purpose of Rule 606(b) is to prevent jurors from being "'harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to' overturn a final judgment." ***Munafo v. Metropolitan Transportation Authority***, 381 F.3d 99, 107 (7th Cir. 2004)(*quoting* ***McDonald v. Pless***, 238 U.S. 264, 267, 35 S.Ct. 783, 784, 59 L.Ed.2d 1300 (1915)).

The prohibition against inquiry into the jury's mental processes extends to consideration of explanatory jury notes that do not fall within the explicit exceptions to Rule 606(b).  *See* Wright & Gold, 27 *Federal Practice and Procedure* §6074, at *417

6

(West 1990); **United States v. Cheek**, 882 F.2d 1263, 1271 (7th Cir. 1989), *vacated on other grounds*, 498 U.S. 192, 111 S.Ct. 605, 112 L.Ed.2d 617 (1991); **United States v. D'Angelo**, 598 F.2d 1002, 1004-05 (5th Cir. 1979); **Domeracki v. Humble Oil & Refining Company**, 443 F.2d 1245, 1247-48 (3rd Cir. 1971); **Vizzini v. Ford Motor Company**, 72 F.R.D. 132, 135 (E.D. Pa. 1976), *vacated on other grounds*, 569 F.2d 754, 762 n.2 (3rd Cir. 1977). For example, the jury inadvertently included two sheets of scratch paper with the verdict that created doubt as to whether the jury had followed the court's instructions in **Domeracki**.  In upholding the district court's decision not to grant a new trial on the basis of these notes, the Third Circuit stated:

> Long settled considerations of public policy dictate "that mistake of the testimony, misapprehension of the law, error in computation, irregular or illegal methods of arriving at damages, unsound reasons or improper motives, misconduct during the trial or in the Jury Room, cannot be shown by the evidence of the jurors themselves, as the ground of disturbing the verdict, duly rendered." The sound justification for the concept that "such matters all inhere in the verdict itself" is the salutary desire to protect participants in the jury system from being "harassed and beset by the defeated party.  If evidence (obtained from jurors) could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation--to the destruction of all frankness and freedom of discussion and conference." (internal citations omitted)
>
> **Domeracki**, 443 F.2d at 1247-48

Similarly, the district court in **Vizzini** received a jury note stating that one juror did not concur in the previous verdict

7

finding in favor of the plaintiff on the issue of liability but now was trying to reach a compromise on the issue of damages. After the district court declared a mistrial on damages only and a subsequent jury arrived at a damages verdict, the plaintiff moved for a new trial on the grounds that the first verdict on liability was not unanimous. In rejecting the motion for a new trial, the district court found that the jury note was incompetent to impeach the jury's verdict under Rule 606(b). *See Vizzini*, 72 F.R.D. at 235. The reasoning in *Vizzini* and *Domeracki* is persuasive here.

The jury notes in this case clearly do not fit within the exceptions to Rule 606(b). As such, they are incompetent evidence to impeach the jury's verdict. In any event, none of the notes explicitly states, as Foggia suggests, that the jury found the defendants liable on his claim. Were that true, the jury could have selected the box finding the defendants liable for breach of contract and filled in the blank for damages in the amount of $6,724.36 plus the plaintiff's prorated bonus for 2003 and 2004, as stated in the notes. An equally plausible explanation for the jury's actual verdict is that the jury felt the defendants were justified in firing the plaintiff but still wanted to reimburse the plaintiff for his travel expenses and the bonus he earned during his tenure with USA. Thus, the notes may have reflected the jury's frustration in a verdict form that did not allow them both to find in favor of the defendants and to reimburse the plaintiff for the work he had done, which would

8

have been contrary to the law.  However, Rule 606(b) does not permit the court to impeach a verdict based on the mental processes of the jurors, let alone a *post-hoc* guess at the jury's motivation extrapolated from jury notes.  The jury was polled, and each member concurred in the verdict prior to its entry.  The motion for a new trial must be denied.

### B. Motion for Judgment Notwithstanding the Verdict

Alternatively, Foggia seeks judgment notwithstanding the verdict under Rule 59.  The correct Federal Rule of Civil Procedure for judgment notwithstanding the verdict, now called judgment as a matter of law, is Rule 50.  Although the parties dispute whether state or federal law provides the rule of decision in this case, it hardly matters because Foggia has not complied with the procedural requirements of either Federal Rule of Civil Procedure 50 or Indiana Trial Rule 50.  Foggia did not move for judgment as a matter of law prior to submission of the case to the jury as required by the federal rule, or prior to entry of judgment as required by the state rule, so this motion is untimely.

Regardless, Foggia's argument for judgment as a matter of law primarily is based on the notes received during the course of jury deliberations, rather than the evidence presented at trial. As stated above, the jury notes are not competent evidence. Insofar as the motion rests on the admissible evidence, the court simply notes that ample evidence was presented at trial to support a judgment in favor of the defendants.  In order to find

9

for Foggia on his Rule 50 motion, the court would be required to construe the reasonable inferences in favor of Foggia and make credibility determinations, both of which are not permitted by law. See **Reeves v. Sanderson Plumbing Products, Inc.**, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). For these reasons, the motion for judgment notwithstanding the verdict is denied.

### C.  Bill of Costs

As a preliminary matter, the defendants argue that they are entitled to part of their costs under Federal Rule of Civil Procedure 68 because they previously made an offer of judgment that Foggia rejected, and alternatively, to all of their costs under Federal Rule of Civil Procedure 54.  This theory of recovery is needlessly complicated because Rule 68 does not apply when the defendant wins on the relevant claim.  See **Delta Air Lines, Inc. v. August**, 450 U.S. 346, 351, 101 S.Ct. 1146, 1149-50, 67 L.Ed.2d 287 (1981) (discussing the parameters of Rule 68 and its interplay with Rule 54).  When judgment is entered in favor of the defendant, the court reviews all of the defendant's proposed costs under Rule 54.  See **August**, 450 U.S. at 354, 101 S.Ct. at 1151 ("[Rule 68] does not apply to judgments in favor of the defendant . . . [In that] extreme situation[] the trial judge retains his Rule 54(d) discretion."). Accordingly, the court considers Foggia's objections to the defendants' bill of costs under Rule 54.

Rule 54(d)(1) states that following judgment in a civil

10

case, "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." The costs that may be awarded are defined by 28 U.S.C. § 1920.  See *Crawford Fitting Company v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441, 107 S.Ct. 2494, 2497, 96 L.Ed.2d 385 (1987); *Northbrook Excess and Surplus Insurance Company v. Procter & Gamble Company*, 924 F.2d 633, 643 (7th Cir. 1991).  These costs include:

> (1)   Fees of the clerk and marshal;
>
> (2)   Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
>
> (3)   Fees and disbursements for printing and witnesses;
>
> (4)   Fees for exemplification and copies of papers necessarily obtained for use in the case;
>
> (5)   Docket fees . . . ;
>
> (6)   Compensation of court appointed experts. . . .
>
> §1920.

While the district court has wide discretion in awarding costs, Rule 54(d)(1) creates a "presumption in  favor of a cost award" as long as those costs are statutorily authorized. *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 427 (7th Cir. 2000). *See also Zahran v. Cleary Building Corp.*, 2 Fed. Appx. 497, 499 (7th Cir. 2001); *Rice v. Sunrise Express, Inc*., 237 F.Supp.2d 962, 978 (N.D. Ind. 2002).  Nevertheless, before taxing costs, the court must determine (1) "that the expenses are allowable cost items,"

and (2) "that the amounts are reasonable and necessary." *Northbrook*, 924 F.3d at 642. *See also* *Manley v. City of Chicago*, 236 F.3d 392, 398-399 (7th Cir. 2001); *Angevine v. Watersaver Faucet Company*, No. 02 C 8114, 2003 WL 23019165, at *1 (N.D. Ill. Dec. 23, 2003). In the course of this inquiry, the court must carefully scrutinize the costs proposed by the prevailing party. *See* *Rice*, 237 F.Supp.2d at 978.

Foggia's principle objection to the defendants' bill of costs is that the witness testimony associated with certain costs was used both to defend the plaintiff's claim, which the defendants won, and pursue the counterclaims, which the defendants lost.  Foggia cites no law in support of this argument, and the defendants' reply is inapplicable because it focuses on Rule 68. Resolution of the issue depends on who was the "prevailing party" under Rule 54.

To be a "prevailing party," a party must prevail "as to a substantial part of the litigation." *Northbrook*, 924 F.2d at 641 (*quoting* *First Commodity Traders, Inc. v. Heinold Commodities, Inc*., 766 F.2d 1007, 1015 (7th Cir. 1985)). The Seventh Circuit analogizes the "prevailing party" standard found in Rule 54 to that contained in 42 U.S.C. §1988 and interpreted by the Supreme Court in *Texas State Teachers Association v. Garland Independent School District*, 489 U.S. 782, 791-92, 109 S.Ct. 1486, 1493-94, 103 L.Ed.2d 866 (1989).  *See* *Mother and Father v. Cassidy*, 338 F.3d 704, 708 (7th Cir. 2003); *Northbrook*, 924 F.2d at 641-42. Under *Garland*, a party has prevailed if it has "succeeded on 'any

12

significant issue in litigation which achieved some of the benefit the parties sought in bringing suit.'" 489 U.S. at 791-92, 109 S.Ct. at 1493 (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978).  At a minimum, the party "must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." **Garland**, 489 U.S. at 792, 109 S.Ct. at 1493.  However, a *de minimus* or technical victory may not be enough to qualify as prevailing under Rule 54.  *See* **Garland**, 489 U.S. at 792, 109 S.Ct. at 1493-94; **Northbrook**, 924 F.2d at 642 (finding that even though the plaintiff had prevailed at trial, only the defendant was entitled to costs because it had prevailed on the major issue on which the measure of damages was based).

When winning and losing claims can be separated from each other, the general practice is to treat the claims as distinct for purposes of apportioning costs under Rule 54.  *See, e.g.,* **Canal v. Commonwealth Edison Company**, No. 98 C 0509, 2003 WL 1908032, at *1 (N.D. Ill. April 18, 2003); **Hollymatic Corporation v. Daniels Food Equipment**, No. 97 C 5514, 2001 WL 76410, at *2 (N.D. Ill. Jan. 26, 2001); **Clem Environmental Corporation v. American Colloid Company, Inc**., No. 90 C 0639, 1991 WL 246545, at *1-2 (N.D. Ill. Nov. 13, 1991).

Conversely, when the claim and counterclaim are so bound together that the counterclaim functions as a defense, the party asserting the counterclaim can be the prevailing party even if the disposition of the case results in a stalemate.  *See, e.g.,*

13

*Rodriguez v. City of Aurora Police Officer J. Ithal*, No. 02 C 7588, 2003 WL 22284202, at *1 (N.D. Ill. Oct. 2, 2003); *Venture Associates Corporation v. Zenith Data Systems Corporation*, No. CIV. A. 92 C 978, 1996 WL 99403, at *1 (N.D. Ill. March 5, 1996). For example, the court dismissed all claims of both parties in *Zenith*, but awarded costs only to the defendant because the defendant's "counterclaim was negligible in comparison to the plaintiff's claims and . . . was not actively pursued by defendant at trial." 1996 WL 99403, at *1. Similarly, the plaintiff had asserted claims for "false arrest, battery, trespass, excessive use of force, and unlawful entry" against the defendant police officer, who counterclaimed for battery, in *Rodriguez*. A jury found in favor of the defendant on all of the plaintiff's claims, but also rejected the defendant's counterclaim and did not award any damages. In granting the defendant costs, the court noted that the defendant had prevailed on the substantial part of her claims, which was that "she neither injured Rodriguez, nor violated his civil rights. . . . The fact that the jury refused to [find Rodriguez culpable for battery] does not diminish Ithal's victory on the core issues." *Rodriguez*, 2003 WL 22284202, at *1. *Rodriguez* and *Zenith* are on point with this case.

Here, Universal Steel fired Foggia under a contractual provision that authorized termination for the commission of criminal, fraudulent, or dishonest acts. Thus, breach of contract, fraud, and breach of fiduciary duty--the counterclaims in

14

this case--were the very reasons Foggia was terminated. Even if the defendants had not asserted these allegations as independent counterclaims, they would have remained necessary affirmative defenses. Because the jury found that the defendants had not breached their contract with Foggia when they terminated him--the issue that began this litigation and on which this case turned--the defendants are the prevailing parties. Accordingly, the plaintiff's attempt to avoid Rule 54 costs on this basis is rejected.

Foggia next objects to the costs for a trial subpoena to Earmon Irons, for the plaintiff's deposition, and for the deposition of Len Wolowiec as incurred prior to the offer of judgment. Because the timing of an offer of judgment has no relevance to the Rule 54 analysis, this argument is not legally significant.[1]

Foggia's arguments with respect to costs regarding Dr. Jennings also fail. First, the fact that a deposition occurred "through courtesy of counsel" has no legal significance for purposes of Rule 54. Second, the use of a Michigan court reporter for a deposition in Indiana is irrelevant, particularly when all counsel agreed to use the reporter. Third, the invoice showing the transcription fee for Dr. Jennings' deposition does not contain any indication that the fee was increased because a full-

---

[1] Foggia also appears to imply that the offer of judgment was not enforceable because it referenced only Foggia's claim, and not the defendants' counterclaims. This argument, which is contrary to *August*, also need not be addressed because Rule 68 does not apply to the defendants' petition. *See* 450 U.S. at 350, 101 S.Ct. at 1149 ("The Rule has no application to offers made by the plaintiff."). *See also* *Collins v. Allen*, No. 1:04 CV 572, 2005 WL 1073369, at *3 (S.D. Ohio 2005) ("Rule 68 simply does not authorize a defendant to offer a judgment on a counterclaim.").

15

size copy, mini-copy, and copy on disk were provided.  Fourth, the plaintiff has not provided any support for his contention that the $85 mailing fee, charged by the court reporter to the defendants, is too much for the copies obtained. Fifth, the defendants have indicated that the $75 subpoena service fee billed to the defendants on June 30, 2005 was for a deposition of Dr. Jennings that did not occur as scheduled. Dr. Jennings is the plaintiff's expert and as such, the burden of his failed appearance properly falls on the plaintiff.

Finally, the court declines to find that one duplicate copy of the Wolowiec deposition is unreasonable.  Each party is entitled to a copy of the depositions taken in a case.

_____

For the foregoing reasons, the Motion for New Trial filed by the plaintiff, Riccardo Foggia, Jr., on February 6, 2006 is **DENIED**, the Alternative Motion for Judgment Notwithstanding the Verdict filed by Foggia, Jr., on February 6, 2006 is **DENIED**, and the Bill of Costs filed by the defendants, Universal Steel America, Inc. and Universal Steel Eisen Und Stahl GMBH, on February 15, 2006 is **GRANTED**. The defendants are **AWARDED** costs in the amount of $4,874.50.

ENTERED this 2nd day of May, 2006

s/ ANDREW P. RODOVICH
United States Magistrate Judge